UNITED STATES of America

v.

Robert M. AVERI.

Cr. No. 88–208–N.

United States District Court,
M.D. Alabama, N.D.

May 25, 1989.

James Wilson, U.S. Atty., and Patricia Conover, Asst. U.S. Atty., for U.S.

Ira DeMent, Montgomery, Ala., for Averi.

## ORDER

MYRON H. THOMPSON, District Judge.

On January 6, 1989, a federal jury convicted defendant Robert M. Averi of one court of failure to keep and maintain adequate records of controlled substances, specifically Halcyon, a violation of 21 U.S.C.A. §§ 842(a)(5), 842(c)(2)(A). The matter before the court is Averi's January 17, 1989, motion for judgment of acquittal notwithstanding the verdict or in the alternative motion for a new trial, with amendments filed January 30, 1989. For the reasons set out below, this motion is due to be denied.

## I.

Averi was a licensed podiatrist, or foot specialist, practicing in Montgomery at the time of the offense. Federal law requires medical practitioners who are authorized to dispense controlled substances by a state to register as well with the federal Drug Enforcement Agency. 21 U.S.C.A. § 823(f). Averi was so registered during the period covered by the indictment in this case. As a requirement of federal registration, registrants must maintain, and furnish to the federal government when requested, certain "records, reports, notifications, declarations, orders or order forms, statements, invoices or [other] information" as described in the United States Code relating to dispensing controlled sub-

stances. § 842(a)(5).[1] This provision facilitates the government's monitoring of the use of such substances on a nationwide basis by establishing a "closed system of drug distribution for legitimate handlers of such drugs." H.Rep. No. 1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4566, 4571–72.[2] The government charged Averi with "knowingly" failing to maintain records as required by § 842(a)(5), an offense which constitutes a misdemeanor violation under § 842(c)(2)(A).[3]

Averi's arguments supporting his motion for judgment of acquittal and for a new trial both revolve around the mental element of the charged offense. With respect to his request for judgment of acquittal, Averi argues that the government did not prove by sufficient evidence that he "knowingly" committed the offense. He bases his request for a new trial on certain "newly discovered evidence" which, he contends, bears on his lack of knowledge of the record-keeping requirements.

## II.

Under Averi's view of the misdemeanor provisions of § 842(c)(2)(A), the government must prove as an element of the offense that Averi was aware of the record-keeping requirements of § 842(a)(5). Upon consideration of the statutory language of § 842, as well as the more decisive public policy concerns underlying the statute, the court disagrees.

The courts have long recognized that Congress bears responsibility for defining federal criminal offenses, including the mental conditions placed on those proscriptions. *See, e.g., United States v. Hudson,* 11 U.S. (7 Cranch) 32, 3 L.Ed. 259 (1812). The court's function is to divine, as best it can, the intent of Congress as to the mental states applying to each element of a criminal offense.

In this instance, the statutory language, which is the starting point for the interpretive method, is ambiguous. The statute requires that the finder of fact determine that the defendant "knowingly" committed the offense of failure to keep and maintain adequate records. By using this term, Congress may have intended to require the prosecution to show that a person covered by the statute failed to maintain adequate records with the specific intent or purpose of violating the statutory duty. For instance, federal law imposes reporting requirements on persons entering the United States with certain monetary instruments. 31 U.S.C.A. § 5316. Congress set criminal penalties for anyone "willfully violating" § 5316. 31 U.S.C.A. § 5322. This circuit's predecessor has read this language synonymously with "knowingly violating" the reporting requirements, and has further recognized as an element of the § 5322 offense the defendant's knowledge of the reporting requirements at the time of the infraction. *See, e.g., United States v. Warren,* 612 F.2d 887 (5th Cir.) (en banc), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980).[4]

Alternatively, Congress may have used the term "knowingly" in § 842(c)(2)(A) to mean only that the defendant must have been aware that he was not maintaining reasonably informative records on his usage of controlled substances. Under this interpretation of "knowingly," a defendant

---

**1.** Detailed descriptions of materials referred to in § 842(a)(5) can be found in 21 U.S.C.A. §§ 827, 828, and 21 C.F.R. §§ 1304.01–1304.38.

**2.** *See United States v. Moore,* 423 U.S. 122, 134–35, 96 S.Ct. 335, 342, 46 L.Ed.2d 333 (1975); *United States v. Blanton,* 730 F.2d 1425, 1427–28 (11th Cir.1984).

**3.** Section 842(c)(2)(A) provides that,
If a violation of this section is prosecuted by an information or indictment which alleges that the violation was committed knowingly and the trier of fact specifically finds that the violation was so committed, such person shall ... be sentenced to imprisonment of not more than one year or a fine of not more than $25,000, or both.

**4.** *See also United States v. Schnaiderman,* 568 F.2d 1208 (5th Cir.1978); *United States v. Granda,* 565 F.2d 922 (5th Cir.1978); *United States v. One (1) Lot of Twenty–Four Thousand Nine Hundred Dollars ($24,9000.00) in U.S. Currency,* 770 F.2d 1530, 1533–34 (11th Cir.1985) (construing the two terms "knowingly" and "willfully" synonymously in the context of § 5316).

need only be aware of his failure to keep such records. The defendant need not know of the duty imposed on him by the statute, nor must he even know that the statute exists. *E.g., United States v. Diecidue,* 603 F.2d 535, 548 (5th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980) (approving jury instruction of "knowingly" as meaning "that the act was done voluntarily and intentionally and not because of mistake or accident").

The key to resolution of this ambiguity lies in the purposes Congress sought to achieve in the passage of the record-keeping provision. The provision constitutes an attempt to regulate closely the distribution of certain substances determined by Congress to pose dangers, if freely available, to the public at large. *See United States v. Moore,* 423 U.S. 122, 134–35, 96 S.Ct. 335, 342, 46 L.Ed.2d 333 (1975). Thus, this statute falls into "the expanding regulatory area involving activities affecting public health, safety and welfare" in which the traditional rule of guilty purpose or intent has been relaxed. *United States v. Freed,* 401 U.S. 601, 607, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971). The Supreme Court has recognized this category of regulated activities in the context of firearms and explosives, *id.,* the transportation of dangerous liquids, *United States v. International Minerals & Chemical Corp.,* 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971), and, with special relevance to the offense at issue in this case, drugs. *United States v. Balint,* 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922).

In *Balint,* the Court construed the Narcotic Drug Act of 1914, which penalized the sale of controlled substances "except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue." *Id.* at 253 n. 1, 42 S.Ct. at 302 n. 1. The defendant contended that the government had not alleged that he knew the narcotics sold were subject to

federal regulation. To this argument the Court responded:

> It is evident from a reading of [this statute] that the emphasis of the section is in securing a close supervision of the business of dealing in these dangerous drugs by the taxing officers of the Government and that it merely uses a criminal penalty to secure recorded evidence of the disposition of such drugs as a means of taxing and restraining the traffic. Its manifest purpose is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him. Congress weighed the possible injustice of subjecting an innocent seller to a penalty against the evil of exposing innocent purchasers to danger from the drug, and concluded that the latter was the result preferably to be avoided. Doubtless considerations as to the opportunity of the seller to find out the fact and the difficulty of the proof of knowledge contributed to this conclusion.

*Id.* at 253–54, 42 S.Ct. at 302–03.

The provision under which Averi was convicted shares key characteristics with the statute in *Balint.* Every person who wishes legally to dispense substances subject to federal regulation must register with the government. §§ 822(a)(2), 823(f); *see Blanton,* 730 F.2d at 1430. In § 842(c)(2)(A), as in *Balint,* Congress has decided to place the burden on registrants wishing to engage in the dispensation of controlled substances of learning what federal regulations govern these substances, at the risk of contravening the law should they fail to comply with regulatory requirements. And like the statute in *Balint,* Congress in enacting § 842(c)(2)(A) "merely use[d] a criminal penalty to secure recorded evidence of such drugs as a means of ... restraining the traffic." *Id.* at 254, 42 S.Ct. at 303.[5]

---

5. *See Moore,* 423 U.S. at 135, 96 S.Ct. at 342 (noting Congress's awareness "that registrants, who have the greatest access to controlled substances and therefore the greatest opportunity

for diversion, were responsible for a large part of the illegal drug traffic") (*citing* 116 Cong.Rec. 998 (1970) (remarks of Sen. Griffin); *id.* at 1663 (remarks of Sen. Hruska)).

This interpretation of Congress's intent with respect to the mental elements of § 842(c)(2)(A) is not a peculiarly harsh one. For professionals in the health care industry, current knowledge of the various facets of federal regulation of controlled substances, some of which are used routinely in medical treatments, should be no more than a necessary and expected aspect of doing business. To paraphrase Justice Douglas's rationale in *Freed,* one would hardly be surprised to learn that dispensation of drugs is an act involving substantial governmental concerns. 401 U.S. at 609, 91 S.Ct. at 1118. To the extent that this interpretation may result in the rare instance of a registrant suffering criminal liability despite knowing nothing of his obligation to maintain careful records, the court is convinced that Congress has determined that such risk is overborn by the dangers posed to the public by such uninformed individuals. *Balint* and its progeny stand for the proposition that this is Congress's legitimate prerogative.

### III.

 Since the court has determined that the government need not prove as an element of its case under § 842(c)(2)(A) that Averi was aware of the statute's record-keeping requirements, and since both of Averi's motions are premised on the government's failure to prove this fact, Averi's motions must fail. But even had the court agreed with Averi's reading of the statute, it would nonetheless deny the motions in the context of this case.[6]

In assessing Averi's motion for judgment of acquittal, the court must consider the evidence presented in the light most favorable to the government and draw all reasonable inferences in favor of the jury's

verdict. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Sellers,* 871 F.2d 1019, 1021 (11th Cir.1989). The government in responding to a motion for judgment of acquittal need not rebut all reasonable hypotheses other than the defendant's guilt; the question is only whether on the evidence presented a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Sellers,* 871 F.2d at 1021. Under this standard, the government has provided sufficient evidence to allow a reasonable inference that Averi knew of his duty to keep adequate records and specifically violated this duty. An investigator for the federal Drug Enforcement Agency testified at trial that when a health professional registers with the agency, it sends him information detailing the prescribed record-keeping requirements which he must follow. The evidence further established that Averi had registered with the Drug Enforcement Agency. This evidence supports a reasonable inference that Averi realized what record-keeping the federal government required of him.

 As to his motion for new trial, Averi relies on certain "newly discovered" evidence, consisting of a letter to him from the Alabama State Board of Podiatry relating to state-enforced rules and regulations on podiatrists. He asserts that he satisfies the following four-part test for granting a new trial: (1) the evidence must be newly discovered and must have been unknown to the defendant at the time of trial; (2) the evidence must be material to the defendant's guilt or innocence, and not merely cumulative or impeaching; (3) the evidence must be such that it will probably produce an acquittal; and (4) the failure of the defendant to learn of this evidence by the

---

Congress has established analogous record-keeping requirements on licensed firearms dealers and has set criminal penalties for "knowingly" failing to keep such records. 18 U.S.C.A. § 922(m). The First Circuit, relying on *Freed* and *International Minerals,* has interpreted this provision as requiring the government to show only that the dealer consciously failed to keep proper records, not that she had knowledge of the statutory duty to keep them. *United States v. Currier,* 621 F.2d 7, 9–10 (1st Cir.1980).

6. The court's charge to the jury on the § 842(c)(2)(A) offense included language that the offense had to have been committed knowingly. Whether implicit in this charge is the requirement that Averi actually knew of the record-keeping requirements under § 842(a)(5) is an issue this court need not resolve. Averi did not object to this charge at trial nor does he challenge the charge in the pending motion.

time of trial must not be due to a lack of diligence on his part. *United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir.1989) (per curiam); *United States v. Sjeklocha*, 843 F.2d 485, 487 (11th Cir.1988).

Averi fails the first and fourth elements of this test, in that he was aware of, and in possession of, this evidence as early as June 28, 1988, half a year before his January 1989 trial. Averi's explanation for his failure to produce the evidence at trial, that he was unable to find it until eleven days after trial when he filed his motion for new trial, does not meet the diligence requirement. Moreover, the court does not view the state agency's letter as undercutting to any significant degree the evidence discussed above which supports a finding that Averi knew of the federal record-keeping requirements referred to in § 842(a)(5). Thus, Averi has failed to meet the third requirement of the test as well.

Accordingly, it is ORDERED that defendant Robert M. Averi's motion for judgment of acquittal notwithstanding the verdict or in the alternative for a new trial, filed on January 17, 1989, and amended January 30, 1989, be and it is hereby denied.