[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10004

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JEREMIE SAINTVIL,
a.k.a. Jeremie Stvil,
a.k.a. Jeremie Saint Vil,
a.k.a. Jeremi Stvil,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:21-cr-00013-AW-GRJ-1

_____

Before ROSENBAUM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Jeremie Saintvil appeals his conviction and sentence for four fraud-related crimes.[1] In short, Saintvil orchestrated an extensive scheme to obtain Paycheck Protection Program[2] ("PPP") loans for illegitimate businesses that he created with information he stole from elderly persons. On appeal, Saintvil contends that (1) the district court erred in denying his pretrial motion to dismiss the indictment for duplicity and failing to strike surplusage from the

---

[1] A jury found Saintvil guilty of each count with which he was charged: (1) aiding and abetting bank fraud, in violation of 18 U.S.C. §§ 1344 and 2, (2) submitting a false statement to a federally insured institution, in violation of 18 U.S.C. § 1014, (3) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), and (4) making false statements, in violation of 18 U.S.C. § 1001(a).

[2] In March 2020, "as a result of the coronavirus pandemic," Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act which authorized the Small Business Administration ("SBA") to administer funds under the PPP to help businesses retain employees and pay other qualified expenses. The CARES Act also included a "special allocation . . . of funds committed directly [to] the [Economic Injury Disaster Loan ("EIDL") program] to respond to the COVID pandemic." The EIDL program provides assistance to businesses affected by certain disasters—in this case, the coronavirus pandemic.

indictment, (2) venue was improper, and (3) his sentence is substantively unreasonable.  For the reasons below, we affirm.

## I.    Background

### A.  Factual Background

From February 2018 through June 2020, Saintvil "fraudulently obtained and possessed" the personal identifying information of several elderly individuals in assisted or senior living facilities.  Alongside other fraudulent activities (*i.e.*, opening lines of credit, obtaining physical checks and debit cards, and transferring funds), Saintvil used the stolen identities to create fictitious businesses and apply for nine PPP loans.  Seven of the nine applications were approved, and funding was distributed.  In similar fashion, Saintvil also fraudulently applied for, and received, an EIDL loan.  One way or another, the distributed proceeds—which totaled more than $1,000,000—ended up in Saintvil's control.

In its indictment against Saintvil, the grand jury detailed Saintvil's entire scheme as perpetrated against various banks and financial institutions, but in Count One[3] it only charged a single execution of bank fraud as against Florida Credit Union ("FCU").[4]

---

[3] We focus on Count One for two reasons.  First, Saintvil's duplicity and surplusage arguments are targeted at Count One.  Second, the remaining three counts reallege and incorporate by reference the factual allegations laid out in Count One.

[4] The indictment started by detailing Saintvil's larger fraudulent scheme:

Specifically, the indictment focused on Saintvil's use of a certain individual's identity (referred to as R.J.H.) to create the fictitious business HEJ Holding, Inc. ("HEJ Holding") and to apply to FCU for a PPP loan. Accordingly, our recitation of the factual background will focus primarily on facts pertinent to this fraudulent instance.[5]

---

**B. The Charge**

Between on or about February 1, 2018, and on or about June 30, 2020, in the Northern District of Florida and elsewhere, the defendant, . . . did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a federally insured financial institution, that is, FCU, [and 12 other institutions], and to obtain moneys owned by and under the custody and control of FCU, [and 12 other institutions] by means of materially false and fraudulent pretenses, representations, and promises.

The indictment then narrowed in on the fraud related to FCU in outlining the "execution" of Saintvil's fraud.

**D. Execution of the Scheme**

Between on or about May 4, 2020, and on or about May 21, 2020, for the purpose of executing and attempting to execute this fraudulent scheme, the defendant . . . did knowingly and willfully submit false and fraudulent representations to FCU in an SBA PPP loan application, and in supporting loan documents and emails.

[5] Saintvil's use of R.J.H.'s identity to create HEJ Holding and apply for a loan with FCU is part of a pattern. The rest of Saintvil's scheme was perpetrated in the same way; he just changed the identities and financial institutions that he used.

22-10004                Opinion of the Court                5

In May 2020, FCU—a federally insured credit union headquartered in Gainesville, Florida—received an email purportedly from R.J.H. who claimed to be the owner of HEJ Holding.[6] The email contained numerous attachments in support of HEJ Holding's request for a PPP loan for $159,202.30.[7] The attachments included a PPP Borrower Application Form, two federal tax documents for HEJ Holding, a copy of R.J.H.'s Florida Driver's License, and a document showing the average monthly

---

[6] The email was sent to Jane Harris, a FCU employee, from a Gmail address that included R.J.H.'s name. The email read:

> Good afternoon Jane, I'm a proud Veteran and owner of HEJ Holding Inc. I have heard nothing but amazing reviews from members of [FCU] about your handling of the SBA [PPP].

> Unlike major banking institutions that has [sic] caused tremendous hardship with ineffective processes, we're in desperate need for personalize [sic] banking attention that can ensure funding as quickly as possible.

> The pandemic has crippled my business and continue [sic] to wreck incalculable havoc to me personally, my team and their families. I beg of you to please help me with the prompt submittal of my SBA PPP application. I've included all necessary documents to ensure expeditious processing.

> Thank you very much for all of your help Jane and I look forward to hearing from you promptly.

> Sincerely,

> [R.J.H.]

[7] According to the application, HEJ Holding had 17 employees and average monthly payroll expenses of $63,680.92.

payroll for HEJ Holding. FCU did not immediately issue any funding because it believed the application was fraudulent.

R.J.H. and FCU continued to communicate about the loan application. In a series of emails over the next two-and-a-half weeks, FCU was "able to capture the IP address from where the email originated" which was later determined to be registered to Saintvil's mother and the physical address where the IP was registered, in Delray Beach, Florida, was owned by Saintvil. And, "[i]n one of the email exchanges between [R.J.H.] and FCU, a completed PPP loan application was electronically signed."

FCU, working with the Federal Bureau of Investigation ("FBI") by this time, called R.J.H. to request his physical presence in order to complete the loan application process. The FCU employee who conducted the call testified that the male voice on the other end of the line started the call by attempting to sound like an older man but his voice "changed to frustration" as the call progressed. The following morning, R.J.H. emailed FCU stating, "we have officially concluded it is not in the best interest of our team's safety to have someone or myself drive from South Florida to Gainesville to open an account in this day age [*sic*]."

Further investigation revealed that (1) R.J.H.'s address was changed from a senior living facility to the address for HEJ Holding in January 2020, (2) R.J.H. was alive and residing in a "memory center, or assisted living facility, in Central Florida," (3) when contacted by the FBI, R.J.H.'s daughter stated that R.J.H. never owned a business, never operated HEJ Holding, and did not

control the email address or phone number associated with the PPP loan, (4) HEJ Holding was not a registered business with the Florida Department of State, Division of Corporations, and the State did not have any record of 2019 corporate income tax returns for HEJ Holding, and (5) the service used to generate the payroll document, Paychex Flex, advised that they could "find no record of [HEJ Holding or R.J.H.]."  In light of these findings, in June 2020, the FBI obtained and executed a search warrant for the Delray Beach residence (tied to the IP address from which the email application was submitted).

Saintvil was at the residence when the search warrant was executed.  The FBI uncovered extensive evidence of Saintvil's fraudulent scheme, including the following evidence[8] specific to the R.J.H./HEJ Holding fraud: "[C]redit cards, banking check books, and other identification documents for [Saintvil], and others, including a . . . debit card in the name of R.J.H.";  and a computer on which agents were able to locate "emails pertaining to [HEJ Holding's] SBA PPP loan application, including the same attachments that were submitted to FCU in support of the loan."

### B. Procedural History

In March 2021, a grand jury indicted Saintvil with bank fraud, submission of a false statement to a federally insured

---

[8] Significant evidence of Saintvil's other fraudulent PPP applications was uncovered—including numerous debit cards and check books in the names of other individuals as well as a copy of one identity-theft victim's driver's license on a photocopier.

institution (specifically, FCU), aggravated identify theft, and making a false statement to the government (specifically, the SBA). Based on the indictment, Saintvil filed a Motion to Dismiss or Strike Surplusage.  He argued first that the district court "should dismiss Count One . . . because it is duplicitous," in that it "improperly alleg[ed] two separate offenses in the same count."  In other words, Saintvil argued that Count One was duplicitous because the bank fraud statute has two subsections,[9] each constituting separate offenses, so that he was improperly charged with two crimes in a single count of the indictment.  Alternatively, Saintvil moved the court to "strike as surplusage from Count One the allegations regarding the twelve financial institutions [other than FCU] . . . and eight businesses [other than HEJ Holding] . . . because [their inclusion was] not only irrelevant to the offenses charged but also prejudicial to [Saintvil] and inflammatory."

---

[9] The bank fraud statute provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
>> (1) to defraud a financial institution; or
>>
>> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.

22-10004                Opinion of the Court                9

The district court denied Saintvil's motion. As to Saintvil's duplicity argument, the district court determined that the bank fraud statute's two subsections provided "alternative ways in which the statute may be violated," rather than separate offenses. As such, the district court found that Count One was not duplicitous. And, as to Saintvil's surplusage argument, the district court concluded that Saintvil had not met the "exacting standard" for showing surplusage because he had not shown that the information at issue was immaterial, inflammatory, or prejudicial.

After an eight-day jury trial in which Saintvil proceeded *pro se*, the jury found Saintvil guilty of all four counts. After the verdict but before sentencing, Saintvil filed a motion arguing that venue was improper as to each count because his actions took place in the Southern, rather than Northern, District of Florida. At sentencing, the district court denied Saintvil's motion, because "at trial there was proof to support the venue that was presented," *i.e.*, the Northern District of Florida, and Saintvil's motion was further "untimely"[10] and "unfounded."

---

[10] On this point, the district court questioned Saintvil as to why he had not waived his motion by failing to raise it pretrial. Saintvil responded that he "was not exposed to the government presentation at trial" so there was "no record as to whether they were going to provide evidence to prove [venue]." The district court found that venue was proper, but later clarified its statement on the untimeliness of Saintvil's motion:

> I want to correct a misstatement I made earlier when I was reviewing your venue motion. I asked if it was waived by not raising it pretrial. Of course, you could raise – to the extent you could waive it as an evidentiary matter, that time has

In total, the district court sentenced Saintvil to 204 months' imprisonment.[11]  The district court recognized that this sentence was "above the guidelines," but concluded that it was necessary because Saintvil's case was "out of the heartland of normal fraud cases."  Specifically, the district court concluded that an above-guideline sentence was proper because "the conduct was egregious," in that "[t]he overall fraud" and "amount of loss" were extreme, the "breadth of fraud was extraordinary," Saintvil targeted many people "who were among the most vulnerable people there are," and Saintvil took advantage of the PPP program that was intended to move money "quickly to the people who need[ed] it."  The district court also considered Saintvil's abilities and education, criminal history, motive, and refusal to accept responsibility, which when considered alongside the need to protect the public from Saintvil, counseled in favor of a stronger sentence.  In sum, the district court concluded that "all of the circumstances of the offense" showed that "a guideline sentence would [not] be sufficient to reflect the seriousness of the offense."

Saintvil timely appealed.

---

passed, too.  There are different kinds of venue objections.  At any rate, I have denied that motion already.

[11] The district court sentenced Saintvil to two concurrent terms of 180 months' imprisonment as to Counts 1 and 2, as well as a term of 24 months' imprisonment as to Count 3 to run consecutively with Counts 1 and 2. Additionally, the district court imposed a term of 60 months' imprisonment as to Count 4 to run concurrently with Counts 1 and 2.

## II.    Discussion

Saintvil puts forth three arguments on appeal.  First, he argues that the trial court erred in denying his motion to dismiss the indictment as duplicitous and failing to strike surplusage from the indictment.  Second, he argues that venue was improper. Third, he argues that his sentence is substantively unreasonable. We address each argument in turn, ultimately affirming Saintvil's conviction and sentence.

### A.  Duplicity and Surplusage

Saintvil's first set of arguments concern the district court's denial of his motion to dismiss.  We start with his argument that Count One of his indictment improperly charged him with two separate crimes and then consider his argument that the indictment contained unlawful surplusage.

#### 1.  Duplicity

We review alleged deficiencies in an indictment *de novo*.  *See United States v. Pacchioli*, 718 F.3d 1294, 1307 (11th Cir. 2013).

"A count is duplicitous if it charges two or more separate and distinct offenses."[12]  *United States v. Deason*, 965 F.3d 1252, 1267 (11th Cir. 2020).  Put differently, each count of an indictment may

---

[12] "[D]uplicitous count[s] pose three dangers: (1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissibility of evidence." *United States v. Schlei*, 122 F.3d 944, 977 (11th Cir. 1997) (quotation omitted).

only charge a single offense.  But "where a statute defines two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count."  *United States v. Felts*, 579 F.3d 1341, 1344 (11th Cir. 2009) (quotation omitted); *see also United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989) ("Where a penal statute, . . . prescribes several alternative ways in which the statute may be violated and each is subject to the same punishment . . . the indictment may charge any or all of the acts conjunctively, in a single count[.]"); *id.* at 1574 ("An indictment is not duplicitous if, in one count, it charges a defendant with violating the statute in both ways." (footnote omitted)).

"Bank fraud is established under two alternative methods." *United States v. Dennis*, 237 F.3d 1295, 1303 (11th Cir. 2001).  First, to prove bank fraud under § 1344(1), "the government must establish that the defendant (1) intentionally participated in a scheme or artifice to defraud another of money or property; and (2) that the victim of the scheme or artifice was an insured financial institution."  *Id.* (quotation omitted).  Second, to prove bank fraud under § 1344(2), the government must establish "(1) that a scheme existed in order to obtain money, funds, or credit in the custody of the federally insured institution; (2) that the defendant participated in the scheme by means of false pretenses, representations or promises, which were material; and (3) that the defendant acted knowingly."  *Id.* (quotation omitted).  Finally, we have held that "[a] conviction can be sustained under either section [of the bank fraud statute] when the indictment . . . charge[s] both clauses."  *Id.*

Saintvil relies upon the Supreme Court's decision in *Loughrin v. United* States, 573 U.S. 351 (2014), which he argues held that the bank fraud statute's subsections establish different offenses. Saintvil, however, misstates the law. In *Loughrin*, the Supreme Court held that § 1344(1), unlike § 1344(2), requires a showing of "intent to defraud a bank." *Id.* at 359–62. That is, the two subsections of the bank fraud statute have different elements. It does not follow, however, that the two subsections therefore define different offenses altogether. Rather, just as the district court reasoned, and as we have held, *see Dennis*, 237 F.3d at 1303, subsections (1) and (2) of the bank fraud statute are merely two ways to prove the same offense—bank fraud. *Loughrin* hurts, rather than helps, Saintvil's case.

Without *Loughrin*, Saintvil's position has no support. Indeed, his argument collapses in light of our holdings that the bank fraud statute provides alternative ways to prove the same offense and that the two subsections can be charged together in one count. *See Dennis*, 237 F.3d at 1303; *Felts*, 579 F.3d at 1344; *Burton*, 871 F.2d at 1573.

We agree with the district court that Count One was not duplicitous.[13]

2.  Surplusage

---

[13] We need not reach Saintvil's argument that the jury instructions did not properly account for the duplicity because we conclude that Count One was not duplicitous.

We review the district court's refusal to strike alleged surplusage for an abuse of discretion. *See United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992).

"A motion to strike surplusage from an indictment should not be granted unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *Id.* (quotation omitted). We have recognized that this threshold is a "most exacting standard." *Id.* (quotation omitted).

"For an indictment to be valid, it must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet." *United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003) (quotation omitted and alterations adopted). Specifically for bank fraud, "[t]he allegation of a scheme is an essential element[.]" *United States v. Adkinson*, 135 F.3d 1363, 1377 (11th Cir. 1998) (citing 18 U.S.C. § 1344). In other words, an indictment that includes bank fraud as a charge should "set forth the manner and means by which the scheme and artifice to defraud operated." *Bobo*, 344 F.3d at 1084.

Saintvil argues that the indictment included "surplusage" because there was extraneous information in Count One (*i.e.*, references to financial institutions other than FCU and fraudulent businesses other than HEJ Holding) that referenced parts of his scheme that were not directly charged in Count One. This argument is a non-starter. Because an allegation of bank fraud requires the government to prove the existence of a scheme, and the scheme-related evidence is exactly the information that Saintvil

argues is surplusage, he cannot prove that this information is not "relevant to the charge." *Awan*, 966 F.2d at 1426; *see also Bobo*, 344 F.3d at 1083–84. While the included information is extensive, the scheme was extravagant and multi-faceted which necessitated the inclusion of additional information in the indictment beyond his actions vis-à-vis FCU and HEJ Holding. Because the additional information was relevant and required in order to charge Saintvil properly,[14] Saintvil fails to meet the "exacting standard" for a motion to strike surplusage. *See Awan*, 966 F.2d at 1426. The district court therefore did not abuse its discretion in declining to strike certain information from Saintvil's indictment.

### B. Venue

"We review *de novo* a determination that the government established venue by a preponderance of the evidence." *United States v. Smith*, 22 F.4th 1236, 1242 (11th Cir. 2022). We view venue-related evidence "in the light most favorable to the government and make all reasonable inferences and credibility determinations in favor of the verdict the jury returned." *Id.*

"Like most rights, a defendant's venue right is not absolute, and it will be deemed waived unless asserted prior to trial." *United States v. White*, 590 F.3d 1210, 1213 (11th Cir. 2009); *see also United*

---

[14] Because Saintvil clearly fails to meet one of three mandatory conditions for a motion to strike surplusage, we need not reach his arguments as to the other two conditions (that the allegations are inflammatory and prejudicial). We do note, however, that his arguments as to the latter two elements also lack persuasive force.

*States v. DiJames*, 731 F.2d 758, 761 n.3 (11th Cir. 1984) (noting that "the right to be tried in the state and district where the crime was alleged to have been committed may be waived voluntarily by the defendant"). If, however, a defendant "has no notice of a defect of venue until the [g]overnment rests its case," the outer limit for raising a venue objection is extended so that it "is timely if made at the close of the evidence." *United States v. Daniels*, 5 F.3d 495, 496 (11th Cir. 1993); *see also United States v. Roberts*, 308 F.3d 1147, 1152 (11th Cir. 2002) (holding that a challenge to venue failed because "appellant did not present his venue objection until the prosecution had rested its case").

"In many (and perhaps most) cases in which the defendant fails to object to a defect in venue, the defendant's silence may be taken to imply a waiver of the venue right." *White*, 590 F.3d at 1214 (alterations adopted and quotations omitted). We will not find waiver, however, when "there is evidence which suggests that the defendant has not waived his venue right." *Id.* In *White*, for example, we held that a defendant waived his venue right through silence when he "did not object before or during trial" and instead "waited until after he was convicted to complain [about venue]." *Id.*

Here, Saintvil did not challenge venue before or at trial, but rather waited a week prior to sentencing to file a motion challenging venue. As such, he has waived his venue right. *See id.* Indeed, Saintvil was put on notice as to a potential venue challenge because the evidence adduced at trial revealed that his actions (*i.e.,*

submitting the fraudulent documents and otherwise carrying out his scheme) occurred in the Southern District of Florida rather than the Northern District of Florida. Therefore, at the latest, Saintvil should have challenged venue during trial. *See Daniels*, 5 F.3d at 496; *Roberts*, 308 F.3d at 1151–52.

### C. Substantive Reasonableness

We review the reasonableness of a sentence under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). "A district court abuses its considerable discretion and imposes a substantively unreasonable sentence only when it '(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors.'" *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (quoting *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*)). "The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *Id.*

Under § 3553(a), a sentencing court must impose a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a). In addition, the sentencing court

must consider the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the guideline sentencing range, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *Id.* § 3553(a)(1), (3)–(4), (6).

The district court may impose an upward variance based on the § 3553(a) factors, *see United States v. Overstreet*, 713 F.3d 627, 637–38 (11th Cir. 2013), but sentences outside the guideline range require sufficiently compelling justifications, *Gall*, 552 U.S. at 50. For example, the district court may impose an upward variance if it concludes that the guideline range insufficiently accounted for the defendant's criminal history. *United States v. Osorio-Moreno*, 814 F.3d 1282, 1288 (11th Cir. 2016). The district court may likewise vary upward based on factors already accounted for in calculating the guideline range. *See United States v. Johnson*, 803 F.3d 610, 619–20 (11th Cir. 2015). A district court's failure to discuss mitigating evidence does not indicate that it ignored or failed to consider this evidence. *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007).

Despite Saintvil's contention otherwise, his sentence is substantively reasonable. First, the district court quite clearly "consider[ed] the extent of the deviation and ensure[d] that the justification [for the deviation was] sufficiently compelling." *Gall*, 552 U.S. at 50. The district court canvassed the applicable considerations on the record, including: the breadth of the fraud, the duration of the fraudulent scheme, the large number of victims,

the vulnerability of those victims, the high loss amount, the circumstances of the offense (*i.e.*, Saintvil taking advantage of emergency PPP funds), his history of fraudulent behavior, the need for deterrence, the need to protect the public from his actions, and his refusal to accept responsibility for his crimes. Each of these considerations was explained to Saintvil during sentencing. *Id.* ("After settling on the appropriate sentence, [the district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."). Second, these same considerations support the district court's sentencing determination and cut against Saintvil's unfounded argument that he is less culpable than other defendants (that he identifies in case law) who received upward variances. Third, the district court's extensive explanation shows that it adequately considered the § 3553(a) factors and determined that an above-guideline sentence was necessary. *See Osorio-Moreno*, 814 F.3d at 1288. To the extent that the district court did not recite each individual factor, that is not required anyway. *Amedeo*, 487 F.3d at 832. Fourth, and finally, Saintvil argues that the district court erred in sentencing because "every single one of the grounds used by the district court" to support the upward variance was "accounted for in the sentencing guidelines." This argument has no support under our law. *See Johnson*, 803 F.3d at 620 ("[The appellant] contends that all relevant factors for the district court to consider in imposing a sentence already were incorporated into the calculation of his advisory guidelines range, such that no fact or

circumstance warranted a variance. This argument is meritless . . . ." (quotation omitted)).

Simply put, Saintvil has not carried his burden of demonstrating that his sentence is substantively unreasonable. *Rosales-Bruno*, 789 F.3d at 1256.

**AFFIRMED.**